IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. DLB-21-355 |
| | * | |
| CAREY LEE SACKMANN, | * | |
| | * | |
| Defendant | * | |
| | * | |
| ******* | | |

## GOVERNMENT'S SENTENCING MEMORANDUM

On June 27, 2023, defendant Carey Sackmann pled guilty to a superseding information charging him with Enticement of a Minor in violation of 18 U.S.C. § 2422(b) as part of a plea agreement with the government. In his agreement's statement of facts, the defendant acknowledged the conduct that was the subject of the original indictment's eleven counts, which included production, receipt, and possession of child pornography. In short, the defendant engaged in a several-year course of conduct that resulted in the sexual abuse of several minors at the hands of Philippines- and Madagascar-based facilitators that Sackmann paid to record or live stream the abuse. Consistent with his plea agreement with the government, Sackmann provided $50,000 total in funds with which to compensate identified abuse victims overseas in exchange for being allowed to plead guilty to an offense with only a ten-year mandatory minimum, though his offense level and sentence range recommended by application of the guidelines reflect the seriousness of the crimes he committed. Acknowledging the defendant's age, acceptance of responsibility, and provision of restitution, the government recommends that the Court impose an imprisonment sentence it deems appropriate for the actual conduct involved.

I. *Offense conduct*

The Pre-Sentence Report and plea agreement's Attachment A both adequately relate the facts of defendant Sackmann's course of criminal conduct. PSR ¶¶ 10-26. In brief, Sackmann's relationships with overseas facilitators began no later than 2015 and continued until after FBI agents interviewed him in the fall of 2020 and obtained warrants to search his electronic devices. Mr. Sackmann used multiple Skype accounts to communicate with these facilitators and receive live streams of minor children engaging in sex acts. Sackmann also paid facilitators for videos they produced of sexual abuse, including those depicting penetrative sex between adults and prepubescent children. The investigation identified ten distinct minor victims of defendant's offenses.

II. *Guidelines*

The government fully agrees with the PSR's calculation of the relevant guideline factors, including the disputed Chapter Four enhancement of five levels for engaging in a pattern of activity involving prohibited sexual conduct. PSR ¶ 89. Courts of Appeal considering application of this enhancement have imposed it in analogous circumstances where there was no physical contact between the defendant and the victims who were abused remotely and livestreamed, nor have Courts of Appeal require that it be restricted to defendants who have previously been convicted of other abuse offenses. *See, e.g.*, *United States v. Knight*, No. 22-5919, 2023 U.S. App. LEXIS 21766 (6th Cir. Aug. 18, 2023) (enhancement applied when pattern of conduct was months-long attempted enticement via livestream and defendant had no prior convictions). Additionally, the Fourth Circuit has endorsed the U.S.S.G.'s commentary that a "pattern" of behavior for U.S.S.G. § 4B1.5's purposes can be established by as few as two episodes. *See United States v. Williams*, 783 F. App'x 269, 276 (4th Cir. 2019) (defendant "engaged in a pattern of activity involving

prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor," USSG § 4B1.5 cmt. n.4(B).)

### III. 18 U.S.C. § 3553(a) Factors

The 3553(a) factors counsel in favor of a significant sentence of imprisonment to reflect the seriousness of the offense, provide general and specific deterrence, and protect society from the defendant. The nature and circumstances of the offense may not be the worst in this vein of cases given the absence of physical abuse committed by the defendant himself or the lack of a custodial/control relationship between Sackmann and his victims, but the facts remain troubling. The number of victims is unusually large for what is, in essence, a production case. The duration of the abusive conduct was extensive, continuing for at least five years, and the defendant did not desist from his course of conduct even after being interviewed by the FBI regarding the offense conduct and having his devices seized. The defendant's actions can, in some sense, be explained by a perception of unreality and detachment both from the online medium through which he perpetrated the offense and in the foreignness of his facilitators and victims. Yet they also evince a frightening lack of empathy.

Mr. Sackmann's background and social history reflect no trauma or abuse that would provide some excuse for his acts. He grew up in a stable, middle-class family with apparently normal relationships. He hold's a bachelor's degree from Maryland's flagship state university. He engaged in apparently normal, age-appropriate relationships with women. There is nothing apparent in his background or characteristics that might provide insight into his descent into child pornography or abuse.

The government recommends that the Court consider the defendant a continuing danger to the community until at least his late seventies, by which point one would expect he would lose

most interest in engaging in sexual activities. Although most studies signal that the risk of recidivism declines rapidly after age 50, the fact that this defendant apparently began offending in his late fifties and that he continued to do so while under investigation gives the government little reason to believe he would voluntarily choose not to reoffend.  With adequate supports such as pre-trial supervision and restricted access to computers and from his home, the government acknowledges that Mr. Sackmann has behaved satisfactorily.  Supervised release is unlikely to provide the same level of stringency and structure, however.

A variant sentence too near the applicable mandatory minimum in this case would neither serve the purposes of specific nor general deterrence.  Although the defendant has taken the unusual step of providing restitution to his victims up front, and the government acknowledges this factor motivated the plea agreement's concession to allow him to argue for less than the otherwise applicable 15-year minimum sentence that he would otherwise have faced, the government is wary of signaling that one can "buy down" an otherwise appropriate period of imprisonment.  The government submits that making restitution available to impoverished victims sooner, however, is a laudable aim and asks the Court to articulate its sentence in a manner that balances the seriousness of the offense conduct with such a financial demonstration of the defendant's remorse and desire to help make his victims whole.[1]

---

[1] Given the difficulty of ensuring that the young victims located in the Philippines and Madagascar actually receive financial restitution intended for them, the Government will submit a motion and draft order that would commit the restitution funds provided by the defendant to the care of the FBI.  The government would make this request to allow the investigating agents to deposit the funds into accounts verified to be in the control of, or benefiting, the victims in this case.

**IV.    *Conclusion***

The government recommends that the starting point for the Court in determining a reasonable sentence in this case be the typically applicable 15-year sentence for the conduct of producing child pornography. From there, the Court should balance the aggravating factors such as the number of victims and persistence of defendant's offense activity with the mitigating factors presented, such as his demonstrated remorse, provision of financial restitution, and age upon release from imprisonment. The government does recommend that, regardless of the length of imprisonment imposed, the Court impose a term supervised release that would extend until defendant reaches the age of 85. Aside from the $50,000 of agreed restitution, the government recommends the Court impose the $5,000 special assessment mandated by 18 U.S.C. § 3014 unless defendant establishes he is indigent.

        Respectfully submitted,

        Erek L. Barron
        United States Attorney

        <u>/s/Adam Ake</u>
        Adam K. Ake
        Assistant United States Attorney